Saul ZAPATA, et al., Plaintiffs,

v.

IBP, INC., Defendant.

No. 93–2366–EEO.

United States District Court,
D. Kansas.

March 5, 1995.

John L. Hampton, David W. Hauber, Glenn B. Brown, Boddington & Brown, Chtd., Kansas City, KS, P. John Brady, R. Lawrence Ward, Shughart, Thomson & Kilroy, Kansas City, MO, for plaintiffs.

Paula S. Greathouse, Pamela L. Falk, IBP, Inc., Emporia, KS, Nancy M. Landis, Jack L. Whitacre, Spencer, Fane, Britt & Browne, Kansas City, MO, John N. Badgerow, Michaela M. Warden, Spencer, Fane, Britt & Browne, Overland Park, KS, Russell P. Wright, Dakota City, KS, for defendant.

### MEMORANDUM AND ORDER

RUSHFELT, United States Magistrate Judge.

The court has before it the Motion of Defendant for Additional Protective Order (doc. 179). Pursuant to Fed.R.Civ.P. 26(c) and 60(b), it seeks an order "to provide that the information produced in the pretrial discovery in this case not be disclosed to anyone outside this litigation unless and until such information is admitted into evidence and becomes part of the Court's record of this case." The requested order would apply to discovery provided both previously and prospectively. As grounds for the motion defendant asserts that "plaintiffs have treated this material as if it were public record—disseminating the information to persons (including lawyers) outside of this case, and disclosing information which could only have come from defendant's files produced in this case." Plaintiffs oppose the motion upon grounds defendant has failed to show good cause for the requested additional protective order.

Two preliminary observations relate to the arguments of the parties and the ruling of this Memorandum and Order. First, the parties have made passing reference to the relationship between protective orders and rights of free speech guaranteed by the First Amendment to the United States Constitution. The parties, however, have not ade-

quately addressed a constitutional issue. The court recognizes that generally it should resolve disputes, if possible, upon non-constitutional grounds. Accordingly, it expresses no opinion here as to whether or not the proposed protective order would violate rights of free speech.

Second, the court finds no applicability of Fed.R.Civ.P. 60(b) to this motion. That rule relates to relief from a final judgment or order. The parties have not identified any final judgment or order upon which the motion should operate. The court otherwise knows of none.

■ Fed.R.Civ.P. 26(c) governs the present motion. Upon motion by a party from whom discovery is sought, and "for good cause shown," the rule authorizes the court to enter an order to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense...." The motion otherwise addresses the discretion of the court.

In support of the motion defendant asserts it has produced thousands of documents in response to requests for production. It now complains that plaintiffs have disseminated this information to persons, including lawyers, outside this case. It describes two incidents in which this has occurred. In the first of these it refers to the use of two documents, designated "Confidential," pursuant to a protective order already entered in this case. In *Debra Lynn Hill v. IBP, Inc.*, 881 F.Supp. 521 (D.Kan.1995), counsel for plaintiff presented and interrogated a deponent about the two documents, apparently minutes of safety-committee meeting(s).

The parties have provided exhibits which confirm that counsel for plaintiffs inadvertently used these documents in the *Hill* case. Upon discovering their own mistake, they immediately sought to correct it. They notified defense counsel and withdrew the documents from the *Hill* case. They also agreed to sealing the relevant parts of the transcript of the deposition, which apparently has been done.

For a second incident of alleged misuse defendant refers to the trial of *Amanda Cha-*

*parro v. IBP, Inc.*, 873 F.Supp. 1465 (D.Kan. 1995) in this court. It contends that counsel for plaintiff in that case proposed to mark for use at trial a training manual from one of defendant's plants. Defendant concedes the document had not marked "Confidential." It asserts, however, that it had not been produced in the *Chaparro* case. It says it produced the manual in this case "with the reasonable belief that it is not a public record, is not subject to review and examination by others outside this case, and with justifiable expectation that the document would not be used in other cases, particularly those which are so unrelated, and in which the parties are not even represented by the same counsel." Defendant then suggests that the attorney for plaintiff in *Chaparro* "confirmed that, of course, counsel for the various plaintiffs in the cases against IBP all exchange documents produced in discovery, for use in any of the cases as they see fit." It has not substantiated this statement, either by affidavit or by anything of record.

To refute the described statement, plaintiffs have attached to their memorandum an affidavit of counsel in *Chaparro*. It denies that he has ever had a copy of the training manual. He states it "was never marked nor offered in the Chaparro case." Finally he asserts, "... to the best of my knowledge, I never made the statement attributed to myself in" the memorandum of defendant.

In support of the motion defendant has cited *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). In a defamation action brought by respondents, the petitioner had sought discovery of the names of the donors and members of the Aquarian Foundation and the amounts of their donations to it. The state courts of Washington had issued and upheld a protective order against the discovery. On appeal the Supreme Court affirmed and held that the issuance of a protective order did not violate any rights of free speech, guaranteed by the First Amendment. The decision recognizes, of course, that courts can restrict discovery. To some extent it also discusses the merits of protective orders. It does not address, however, the question of "good cause" which confronts the court in this case.

Defendant also cites *Wyeth Laboratories v. U.S. Dist. Ct. for D. of Kan.*, 851 F.2d 321 (10th Cir.1988). In that case the district judge sought to establish for the benefit of future litigants and the public a library of materials assembled from the case before it. On appeal the Tenth Circuit ruled the district court lacked authority to establish such a library. Beyond that the case hardly stands for anything applicable to the motion defendant here presents. It has nothing to do with the criterion of "good cause" for a protective order within the meaning of Fed. R.Civ.P. 26(c).

Opposing the motion, plaintiffs cite *Koster v. Chase Manhattan Bank*, 93 F.R.D. 471 (S.D.N.Y.1982). It discusses Rule 26(c) and the criteria for "good cause" to support a motion for protective order. Similar to the motion before this court, defendants in *Koster* sought a broad protective order against use by anyone other than the litigants of "information or documents obtained through discovery or other proceedings herein...." *Id.* at 473. Denying the motion, the court held defendants had failed to demonstrate good cause:

> In determining whether there is good cause to issue a Rule 26(c) order that prohibits the dissemination of discovery materials, the initial inquiry is whether the moving party has shown that disclosure of the information will result in a "clearly defined and very serious injury." *United States v. International Business Machines Corp.*, *supra*, 67 F.R.D. [40] at 46 [ (S.D.N.Y.1975) ] (emphasis deleted), *see* pt. I(B) *supra*. As a result of the plaintiff's decision to publicize her allegations against the defendants last August, the Bank claims that it and its employees suffered embarrassment and injury to reputation. Ross claims that the dissemination of this information had injurious effects on his business and personal life, and he cites specific examples. First, his consulting business, which he began in February 1981 and which had grown steadily since its inception, experienced a lull in growth during the late summer and early fall. Second, two of his corporate clients expressed concern about the desirability of maintaining a business relationship in light of the

charges. Neither, however, has terminated the relationship. Third, two potential clients with whom he had been negotiating informed him that they "felt it appropriate to await further developments before they made a decision" on whether to retain the services of his firm. Ross Affidavit ¶ 6. Fourth, an appointment to a teaching position, which he was scheduled to receive last summer, was delayed until the fall. Fifth, he suffered from "heightened blood pressure" and insomnia for a time after the plaintiff publicized her allegations. Sixth, his relationship with his wife, whom he married in February 1981, his ex-wife, and his son became strained. Finally, he received harassing and threatening phone calls. The defendants believe it "self-evident" that there will be a recurrence of these injuries if the plaintiff is permitted to disseminate the fruits of discovery.

Even if it is assumed that these injuries will reoccur and that they are sufficiently "defined and serious," other factors militate against issuing the protective order proposed by the defendants. Our first concern is the breadth of the proposed order, which would prohibit dissemination of discovery materials that are as yet nonexistent. The defendants argue that the proposed order is the only way to prevent dissemination of information that may injure their interests. Failure to issue this order would, according to the defendants, have the effect of "shut[ting] the barn door after the horses have left." Defendants' Joint Memorandum of Law in Further Support of Their Motion and in Reply to the Opposing Memoranda of Amici at 3. We disagree.

The circumstances of a particular case may sometimes warrant an order restricting dissemination of discovery materials before the court even knows the contents of those materials. *See In re Halkin*, *supra*, 598 F.2d [176] at 196 n. 47 [ (D.C.Cir. 1979) ] (court recognized that, in some instances, an order similar to the one proposed by the defendants could be appropriate). In [*In re*] *San Juan Star* [*Co.*, 662 F.2d 108 (1st Cir.1981) ] for example, the First Circuit upheld an order prohibiting

dissemination of information contained in subsequent depositions. The court, however, emphasized that this "arguably over-broad" order was justified only because the unusual circumstances of the case made it probable that "any additional publicity of deposition contents would be damaging to the defendants' fair trial rights." *In re San Juan Star Co., supra,* at 117 (emphasis in original).

93 F.R.D. 471, 480–81 (S.D.N.Y.1982) (footnotes deleted).

Several reasons lead the court to find that the motion before it fails to satisfy the requirement of "good cause" within the meaning of Fed.R.Civ.P. 26(c). First, its underlying factual premises fail. The improper use of two exhibits in the course of a deposition in the *Hill* case appears to constitute nothing more than inadvertence which opposing counsel immediately and appropriately corrected. The court does not see that the proposed additional protective order, however, would afford any greater protection against such inadvertence than the one which the court has previously entered. Pursuant to it, defendant had already marked the documents "Confidential." Counsel for plaintiffs mistakenly mixed two exhibits in the course of taking successive depositions on the same day in the same place, one in each case. The remedy for that peccadillo lies in a motion for sanctions for violating the protective order already in place, not for more but irrelevant protection. The court finds nothing to indicate that the misuse of the exhibits was other than inadvertent. Inasmuch as the parties have brought it to the attention of the court, it admonishes counsel for plaintiffs to exercise care to avoid any recurring violations of the protective order.

 Defendant has failed to substantiate any offense misuse of the training manual. Admittedly it bore no designation of confidentiality. Whatever expectancies defendant may have had, it has not cited and the court otherwise knows of no rule or principle which restricts the use of discovery to the case in which it is provided. Courts, including this one, have often entered protective orders which include such a restriction, when the parties themselves have proposed it by agreement. Some circumstances may justify such an order, particularly where the discovery indeed includes trade secrets or other proprietary or confidential information. The court indulges no assumption, however, that all discovery falls into these kinds of categories.

Defendant, furthermore, has not supported its allegation about the training manual with anything of record. It appears to rely solely upon unsworn memory of counsel or some other unidentified person. The court itself does not know how reliable such memory may be. The affidavit of the allegedly offending attorney, however, controverts the allegation. Nothing in the reply memorandum of defendant, moreover, appears to discredit this affidavit.

Defendant has thus failed to show that any of the information produced requires or qualifies for a protective order. It has also failed to show that its disclosure or even the use of any such information in other litigation will indeed create any legally recognizable harm. The drafter of the rules of civil procedure could easily have included a restriction that use of discovery is limited to the litigation in which it is provided, were such their intent. The court finds no such provision. The rules instead contemplate individualized protection when appropriate upon a showing of good cause.

The court also fails to see any inherent evil, at least upon the present motion, in the use of discovery in litigation beyond that in which it is provided. In some cases abuse may develop, and the court will then issue a Protective Order. In other instances such use may save both time and expense for both the litigants and the court. If indeed the same information is discoverable and perhaps admissible in more than one case, the court finds little persuasion in the suggestion that virtue lies in a policy which would require every litigant to repeat and multiply the same discovery procedures in every other similar action. Such a policy would hardly accord with the purpose of the rules as set forth in Fed.R.Civ.P. 1, to "be construed and administered to secure the just, speedy, and inexpensive determination of every action."

The court cannot find that defendant has shown good cause, within the meaning of Fed.R.Civ.P. 26(c), for its proposed additional protective order. For the foregoing reasons it denies the Motion of Defendant for Additional Protective Order (doc. 179). Circumstances do not justify an award of expenses with respect to the denial of the motion.

IT IS SO ORDERED.